**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **CASH PROCESSING SERVICES, LLC**,<br>a Nevada Limited Liability Company;<br>**DONALD GILMAN**, an individual,<br>Plaintiffs,<br>v.<br>**PNC BANK, N.A.**, a Pennsylvania Bank<br>Defendant. | Civil Action No.: |

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiffs, Cash Processing Services, LLC (hereinafter "CPS") and Donny Gilman (hereinafter, "Gilman" and together with CPS, "Plaintiffs"), by and through their undersigned counsel, file this Complaint against PNC Bank, N.A. (hereinafter, "PNC"), and allege as follows:

## I. INTRODUCTION

1. This is an action for declaratory and injunctive relief and damages arising from Plaintiffs' placement on Mastercard's Member Alert to Control High-Risk Merchants ("MATCH") system.

2. According to Mastercard's official MATCH records, PNC is the reporting bank responsible for Plaintiffs' MATCH listing and reported Plaintiffs for the reason code "Violation of Standards."

3. Plaintiffs have no record of ever maintaining a merchant processing or acquiring relationship with PNC.

4. After learning that Mastercard identified PNC as the reporting Acquirer, Plaintiffs notified PNC of the MATCH listing, requested that PNC investigate the matter, and requested that PNC provide the information supporting the listing and take the steps necessary to correct or

remove any erroneous MATCH entry in accordance with Mastercard's Security Rules and Procedures.

5. PNC did not identify any merchant relationship with Plaintiffs, did not identify any factual basis for Plaintiffs' MATCH listing, did not identify any other institution responsible for the listing, and did not take action to investigate the discrepancy with Mastercard or seek correction or removal of Plaintiffs' MATCH listing.

6. Under Mastercard's Security Rules and Procedures, merchants are not permitted to obtain removal from the MATCH system directly from Mastercard. Instead, inquiries concerning a MATCH listing and requests for removal must be directed to, and acted upon by, the reporting Acquirer identified in the MATCH system.

7. Because Mastercard identifies PNC as Plaintiffs' reporting Acquirer, and because PNC has declined to investigate or take action concerning Plaintiffs' MATCH listing, Plaintiffs have been left without any meaningful administrative mechanism to challenge or obtain removal of the listing and have been forced to seek judicial intervention.

8. Plaintiffs therefore seeks (a) a declaration defining the parties' rights and obligations concerning Plaintiffs' MATCH listing and PNC's responsibilities as the reporting Acquirer identified by Mastercard, and (b) damages resulting from PNC's negligent placement of Plaintiffs on the MATCH system and, alternatively, PNC's negligent failure to investigate and correct or remove Plaintiffs' MATCH listing after receiving notice of the discrepancy.

## II. PARTIES

9. CPS is a limited liability company organized and existing under the laws of the State of Nevada, with its principal place of business in Storey County, Nevada.

10. CPS's sole member is a Nevada corporation.

11. Gilman is a natural person residing in the State of Nevada. Gilman is the manager of CPS.

12. According to Mastercard's official MATCH records, Gilman has been identified as a principal associated with CPS's MATCH listing. As a result, Gilman has independently suffered damages arising from his personal inclusion on the MATCH system.

13. PNC is a national banking association organized under the laws of the United States. PNC's main office, as designated in its articles of association, is located in Pittsburgh, Pennsylvania. PNC may be served with process through its registered agent or in any other manner authorized by law.

14. At all times material hereto, PNC was a member institution participating in Mastercard's payment card network and the MATCH program and was subject to Mastercard's Security Rules and Procedures governing participation in the MATCH system.[1]

15. According to Mastercard's official MATCH records, PNC is the reporting Acquirer responsible for Plaintiffs' MATCH listing. Plaintiffs has no record of ever maintaining a merchant processing, acquiring, or other commercial relationship with PNC.

## III. JURISDICTION AND VENUE

16. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a) because the parties are completely diverse and the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs.

---

[1] The complete Mastercard Security Rules and Procedures—Merchant Edition, 3 February 2026 can be accessed here: https://www.mastercard.com/content/dam/mccom/shared/business/support/rules-pdfs/SPME-Manual.pdf.

17. This Court has personal jurisdiction over PNC because PNC is a national banking association whose main office is located within this District and is therefore subject to the jurisdiction of this Court.

18. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) because PNC resides in this District.

19. An actual and justiciable controversy exists between the parties concerning PNC's responsibility for Plaintiffs' placement on the MATCH system, PNC's obligations under Mastercard's Security Rules and Procedures after being identified by Mastercard as the reporting bank, and Plaintiffs' entitlement to removal from the MATCH system.

20. Declaratory relief is authorized pursuant to 28 U.S.C. §§ 2201 and 2202 because a declaration of the parties' respective rights and obligations will resolve the present controversy and guide their future conduct. An award of damages alone cannot resolve the continuing harm caused by Plaintiffs' placement on the MATCH system.

## IV. THE MASTERCARD MATCH SYSTEM

21. Mastercard operates the MATCH system, formerly known as the Terminated Merchant File ("TMF"), for use by acquiring banks and other participants in the payment card industry.

22. An acquiring bank (hereinafter, an "Acquirer") is a financial institution that is licensed by Mastercard to acquire and process payment card transactions on behalf of merchants. Among other responsibilities, an Acquirer sponsors merchants into the Mastercard payment network, assumes responsibility for those merchants' compliance with Mastercard's Security Rules and Procedures, and is authorized to report qualifying merchants to the MATCH system.

23. The MATCH system is intended to provide participating Acquirers with information concerning merchants that have been terminated for one or more of the reason codes established by Mastercard in its Security Rules and Procedures.

24. Acquiring banks and other payment processing participants routinely consult the MATCH system when evaluating prospective merchant accounts. As a practical matter, placement on the MATCH system substantially impairs a merchant's ability to obtain payment card processing services.

25. Mastercard's Security Rules and Procedures provide that only an Acquirer maintaining the acquiring relationship with a merchant may report that merchant to the MATCH system after determining that one of Mastercard's qualifying MATCH reason codes exists. The rule states as follows:

> ## 11.5 When to Add a Merchant to MATCH Pro
>
> If either the Acquirer or the MATCH Merchant acts to terminate the acquiring relationship (such as by giving notice of termination) and, at the time of that act, the Acquirer has reason to believe that a condition described in Table 11.4 exists, then the Acquirer must add the required information to MATCH Pro within five calendar days of the earlier of either:
>
> 1. A decision by the Acquirer to terminate the acquiring relationship, regardless of the effective date of the termination, or
> 2. Receipt by the Acquirer of notice by or on behalf of the MATCH Merchant of a decision to terminate the acquiring relationship, regardless of the effective date of the termination, or
> 3. The Acquirer becomes aware of a MATCH Merchant issue that meets one of the reason codes listed in Section 11.5 of this manual.
>
> An Acquirer must retain the Merchant Reference Number that MATCH Pro returns when a MATCH Merchant has been added to MATCH Pro.

[*See* <u>Mastercard Security Rules and Procedures—Merchant Edition • 3 February 2026</u> at § 11.5 (When to Add a Merchant to MATCH Pro)].

26. Mastercard's Security Rules and Procedures further require an Acquirer to "act diligently, reasonably, and in good faith to comply with MATCH Pro system requirements." [*See*

Mastercard Security Rules and Procedures—Merchant Edition • 3 February 2026 at § 11.4 (Acquirer Requirements)].

27. The relevant rules further state that "[t]he Acquirer retains responsibility for each of its MATCH Pro listings, including the accuracy of such listings" and, more specifically, "[t]he Acquirer is responsible for ensuring that accurate data is entered into MATCH Pro." [*Id.*].

28. Except where a merchant was reported to the MATCH system "for reason code 12 (Payment Card Industry Data Security Standard Noncompliance)" Mastercard's Security Rules and Procedures do not permit a merchant to obtain removal from the MATCH system directly from Mastercard. Rather, the merchant must seek relief through the Acquirer identified by Mastercard as the reporting Acquirer. [*See* Mastercard Security Rules and Procedures—Merchant Edition • 3 February 2026 at § 11.13 (MATCH Merchant Removal from MATCH Pro)].

29. Finally, the reporting Acquirer is responsible for responding to merchant inquiries concerning a MATCH listing and for responding to requests for removal from the MATCH system in accordance with Mastercard's Security Rules and Procedures. [*See* Mastercard Security Rules and Procedures—Merchant Edition • 3 February 2026 at §§ 11.4 (Acquirer Requirements) and 11.5.1 (Acquirer Responsibility: Requests for Removal from MATCH Pro)].

30. In other contexts involving the dissemination of inaccurate information, Congress has recognized that once an entity furnishing information determines that previously furnished information is inaccurate or incomplete, reasonable care requires that the furnishing entity notify the reporting agency and provide corrected information. *See* 15 U.S.C. § 1681s-2(a)(2). Although that statute does not create a private cause of action under the circumstances presented here, it reflects the standard of reasonable conduct expected of an entity that learns it has furnished, or is identified as having furnished, inaccurate information to an industry reporting system.

31. Because merchants are not permitted to bypass the reporting Acquirer and seek relief directly from Mastercard, the reporting Acquirer serves as the merchant's exclusive administrative avenue for investigating, correcting, and, where appropriate, removing an erroneous MATCH listing.

## V. FACTUAL ALLEGATIONS

32. Plaintiffs is presently listed on Mastercard's MATCH system.

33. After learning of its MATCH listing, Plaintiffs contacted Mastercard to determine the identity of the reporting Acquirer and the basis for the listing.

34. Mastercard advised Plaintiffs that PNC was the reporting Acquirer responsible for Plaintiffs' MATCH listing.

35. Mastercard further advised Plaintiffs that Plaintiffs were added to the MATCH system on or about February 23, 2024, under the reason code "Violation of Standards."

36. Plaintiffs have no record of ever maintaining an acquiring relationship, merchant processing agreement, or other commercial relationship with PNC.

37. On April 23, 2026, Plaintiffs, through counsel, notified PNC that Mastercard identified PNC as the reporting Acquirer responsible for Plaintiffs' MATCH listing.

38. Plaintiffs requested that PNC identify whether it was responsible for Plaintiffs' placement on the MATCH system and, if so, identify the factual basis for the listing, the applicable reason code, the date of placement, and produce all documents relating thereto.

39. Plaintiffs further requested that PNC submit a removal recommendation to Mastercard seeking PNC removal of Plaintiffs from the MATCH system, as the listing was erroneous. Plaintiffs further advised PNC of its obligations under the Mastercard Security Rules governing merchant inquiries and requests for removal from the MATCH system.

40. On April 24, 2026, PNC responded that it was unable to locate Plaintiffs on MATCH or otherwise within PNC's systems.

41. Thereafter, PNC again advised that it could not locate Plaintiffs as a customer or account holder and requested additional identifying information.

42. After advising Plaintiffs that Defendant possessed no records concerning Plaintiffs, Defendant nevertheless failed to notify Mastercard that its records appeared inaccurate or incomplete and failed to provide Mastercard with information reasonably necessary to correct the apparent discrepancy.

43. Despite being advised that Mastercard identified PNC as the reporting Acquirer, PNC did not identify another institution responsible for Plaintiffs' MATCH listing.

44. PNC likewise did not advise Plaintiffs that Mastercard's records incorrectly identified PNC as the reporting Acquirer.

45. Upon information and belief, PNC did not investigate with Mastercard why Mastercard identified PNC as the reporting Acquirer for Plaintiffs' MATCH listing.

46. Upon information and belief, PNC did not request that Mastercard correct or remove Plaintiffs' MATCH listing.

47. Upon information and belief, PNC has no idea as to why it was identified as the Acquirer that placed Plaintiffs on the MATCH list, and as such the placement constitutes an "error" under the Mastercard Rules, the sole reason that an Acquirer must recommend removal from MATCH.

48. Nonetheless, Plaintiffs remains listed on the MATCH system.

49. As a direct and proximate result of Plaintiffs' placement on the MATCH system, Plaintiffs were rendered unable to accept payment card transactions and has been unable to obtain replacement payment processing on commercially reasonable or otherwise favorable terms.

50. Plaintiffs has therefore suffered, and continues to suffer, substantial economic damages in an amount to be proven at trial, but that exceed $75,000.00, exclusive of interest and costs.

## CAUSES OF ACTION

### Count I – Declaratory Judgment (28 U.S.C. §§ 2201 and 2202)

51. Plaintiffs incorporate by reference the allegations contained in Paragraphs 1 through 50 as though fully set forth herein.

52. An actual, present, and justiciable controversy exists between Plaintiffs and PNC concerning PNC's responsibility for Plaintiffs' placement on Mastercard's MATCH system and PNC's obligations with respect to Plaintiffs' continued MATCH listing.

53. Mastercard has identified PNC as the reporting Acquirer responsible for Plaintiffs' MATCH listing.

54. Plaintiffs have no record of ever maintaining an acquiring relationship, merchant processing agreement, or other commercial relationship with PNC.

55. Plaintiffs notified PNC that Mastercard identified PNC as the reporting Acquirer and requested that PNC investigate the MATCH listing and take the actions necessary under Mastercard's Security Rules and Procedures to correct or remove any erroneous MATCH listing.

56. PNC has denied possessing records reflecting any relationship with Plaintiffs but has not identified another institution responsible for Plaintiffs' MATCH listing, has not advised Plaintiffs that Mastercard's records incorrectly identify PNC as the reporting Acquirer, and has not informed Plaintiffs that it has taken action to resolve the discrepancy with Mastercard.

57. Under Mastercard's Security Rules and Procedures, a merchant may not obtain removal from the MATCH system directly from Mastercard. Instead, requests concerning a MATCH listing and requests for removal must be addressed through the reporting Acquirer identified in the MATCH system.

58. Because Mastercard identifies PNC as the reporting Acquirer, and because PNC has declined to take the actions necessary to resolve Plaintiffs' MATCH listing, Plaintiffs has been deprived of any meaningful administrative mechanism to challenge or obtain removal of the MATCH listing.

59. A judicial declaration is necessary to determine the parties' respective rights and obligations and to resolve the present controversy.

60. Plaintiffs seek a declaration that:

a. Mastercard identifies PNC as the reporting Acquirer responsible for Plaintiffs' MATCH listing;

b. PNC either (i) caused or authorized Plaintiffs' placement on the MATCH system, or (ii) is the entity responsible under Mastercard's Security Rules and Procedures for responding to Plaintiffs' MATCH inquiry and request for removal because Mastercard identifies PNC as the reporting Acquirer;

c. if PNC did not cause or authorize Plaintiffs' MATCH listing, PNC is obligated to take all reasonable and necessary steps to notify Mastercard of the discrepancy and to seek correction of Mastercard's records identifying PNC as the reporting Acquirer;

d. if PNC caused or authorized Plaintiffs' MATCH listing, PNC is obligated to determine whether Plaintiffs' MATCH listing complies with Mastercard's Security

Rules and Procedures and, if not, to request removal or correction of the listing; and

e. PNC must take all actions within its authority under Mastercard's Security Rules and Procedures necessary to correct or remove any erroneous MATCH listing identifying Plaintiff.

61. Plaintiffs has no adequate remedy at law because monetary damages alone cannot restore Plaintiffs' ability to obtain payment card processing or remove Plaintiffs from the MATCH system.

62. **WHEREFORE**, Plaintiffs respectfully requests that the Court enter judgment in its favor and against PNC, declare the parties' respective rights and obligations as set forth above, grant such further declaratory and equitable relief as the Court deems just and proper, award Plaintiffs its costs and any other relief authorized by law, and retain jurisdiction to enforce the Court's declaratory judgment.

**Count II – Negligence**

63. Plaintiffs incorporate by reference the allegations contained in Paragraphs 1 through 50 as though fully set forth herein.

64. As a participant in Mastercard's MATCH system, PNC owed Plaintiffs a duty to exercise reasonable care before reporting Plaintiffs for placement on the MATCH system.

65. That duty included, among other things, conducting a reasonable investigation, determining that Plaintiffs satisfied one of Mastercard's qualifying MATCH reason codes, acting diligently, reasonably, and in good faith, and otherwise complying with the standard of care applicable to a reporting Acquirer under Mastercard's Security Rules and Procedures.

66. Defendant's duty to exercise reasonable care in connection with Plaintiffs' placement on the MATCH system extended to the period after Defendant learned that Mastercard

identified Defendant as the reporting Acquirer, while simultaneously determining that Defendant had no records concerning Plaintiffs.

67. That duty required Defendant to exercise reasonable care by investigating the discrepancy and taking appropriate steps to ensure that Mastercard's records were accurate.

68. The Mastercard Security Rules and Procedures, together with the public policy reflected in 15 U.S.C. § 1681s-2(a)(2), are evidence of the standard of reasonable care applicable to Defendant's conduct.

**First Alternative Theory of Negligence: Negligent MATCH Reporting**

69. Upon information and belief, PNC reported Plaintiffs for placement on the MATCH system.

70. This allegation is based upon Mastercard's official MATCH records, which identify PNC as the reporting Acquirer responsible for Plaintiffs' MATCH listing.

71. Upon information and belief, before reporting Plaintiffs for placement on the MATCH system, PNC failed to exercise reasonable care.

72. Specifically, upon information and belief, PNC breached its duty by:

a. failing to conduct a reasonable investigation before reporting Plaintiffs for placement on the MATCH system;

b. failing to determine that Plaintiffs satisfied the requirements for placement on the MATCH system;

c. reporting Plaintiffs under the MATCH reason code "Violation of Standards" without a reasonable factual basis;

d. failing to act diligently, reasonably, and in good faith before reporting Plaintiffs to the MATCH system; and

e. otherwise failing to exercise the degree of care that a reasonably prudent reporting Acquirer would exercise under the same or similar circumstances.

73. As a direct and proximate result of PNC's negligence, Plaintiffs were placed on the MATCH system.

74. As a further direct and proximate result of PNC's negligence, Plaintiffs were rendered unable to accept debit and credit card transactions, has been unable to reestablish payment processing on commercially reasonable or otherwise favorable terms, and has suffered damages in excess of $75,000.00, exclusive of interest and costs.

**Second Alternative Theory of Negligence: Negligent Failure to Investigate and Correct Plaintiffs' MATCH Listing**

75. Alternatively, if PNC did not report Plaintiffs for placement on the MATCH system, PNC nevertheless owed Plaintiffs a duty to exercise reasonable care after Plaintiffs notified PNC that Mastercard identified PNC as the reporting Acquirer responsible for Plaintiffs' MATCH listing.

76. As the reporting Acquirer identified by Mastercard, PNC was the only institution identified by Mastercard as authorized to process Plaintiffs' investigation, correction, or removal request of its MATCH listing pursuant to Mastercard's Security Rules and Procedures.

77. Plaintiffs notified PNC that Mastercard identified PNC as the reporting Acquirer, advised PNC that Plaintiffs had no record of any relationship with PNC, requested that PNC investigate the discrepancy, and requested that PNC take the actions necessary to correct or remove any erroneous MATCH listing.

78. Upon information and belief, PNC failed to exercise reasonable care in responding to Plaintiffs' requests.

79. Specifically, upon information and belief, PNC breached its duty by:

a. failing to conduct a reasonable investigation concerning Plaintiffs' MATCH listing;

b. failing to determine why Mastercard identified PNC as the reporting Acquirer for Plaintiffs' MATCH listing;

c. failing to communicate with Mastercard concerning the discrepancy between Mastercard's records and PNC's own records;

d. failing to determine whether Plaintiffs' MATCH listing was erroneous;

e. failing to determine whether another institution had improperly identified PNC as the reporting Acquirer;

f. failing to identify to Plaintiffs the institution, if any, responsible for Plaintiffs' MATCH listing;

g. failing to request that Mastercard correct its records if PNC was not the proper reporting Acquirer;

h. failing to request removal or correction of Plaintiffs' MATCH listing if PNC determined, or reasonably should have determined, that the listing was erroneous or unsupported; and

i. otherwise failing to exercise the degree of care that a reasonably prudent reporting Acquirer would exercise after receiving notice that Mastercard identified it as responsible for a merchant's MATCH listing.

j. failing, after determining that Defendant possessed no records concerning Plaintiffs, to notify Mastercard of the apparent inaccuracy in Mastercard's records or otherwise provide information reasonably necessary to ensure that Mastercard's records were complete and accurate.

80. As a direct and proximate result of PNC's negligence, Plaintiffs' MATCH listing remained active.

81. As a further direct and proximate result of PNC's negligence, Plaintiffs were rendered unable to accept debit and credit card transactions, has been unable to reestablish payment processing on commercially reasonable or otherwise favorable terms, and has suffered damages in excess of $75,000.00, exclusive of interest and costs.

**WHEREFORE**, Plaintiffs respectfully requests that the Court enter judgment in its favor and against PNC, award compensatory damages in an amount to be determined at trial, together with pre-judgment and post-judgment interest as allowed by law, costs of suit, such other relief as the Court deems just and proper, and any equitable relief necessary to effectuate the Court's judgment.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully request that this Court enter judgment in its favor and against PNC, and grant the following relief:

a) Enter a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202 declaring the parties' respective rights and obligations with respect to Plaintiffs' MATCH listing, including the declarations requested in Count I;

b) Award Plaintiffs compensatory damages in an amount to be determined at trial, but in excess of $75,000.00, together with all consequential damages permitted by law;

c) Award pre-judgment and post-judgment interest as permitted by law;

d) Award Plaintiffs their taxable costs incurred in this action;

e) Grant such further legal, equitable, and declaratory relief as the Court deems just and proper.

///

**DEMAND FOR JURY TRIAL**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs hereby demand a trial by jury on all issues so triable.

Respectfully submitted,

By: /s/ Richard L. Vanderslice

Richard L. Vanderslice, Esq.
Pennsylvania Bar Number: 202153
RICHARD L. VANDERSLICE, P.C.
1445 Snyder Avenue
Philadelphia, PA 19145
Telephone: (215) 515-7197

rlv@vanderslicelaw.com

Dated: August 21, 2026

**GLOBAL LEGAL LAW FIRM**

By: /s James C. Huber

James C. Huber, Esq. (pro hac vice pending)
Bryce M. Van De Moere, Esq. (pro hac vice pending)
Attorneys for Plaintiffs,
CASH PROCESSING SERVICES, LLC